IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY | : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | NO. 06-2227 |
| JAMES E. SWEENEY | : : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

FILED
OCT 11 2011
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

Tucker, J.                                                                                     October 7, 2011

Presently before this Court are the Parties' Cross-Motions for Summary Judgment (Doc. 13, 15). Upon careful consideration of the parties' submissions and exhibits thereto and for the reasons set forth below, the Court will deny Defendant's Motion for Summary Judgment and grant Plaintiff's Motion.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, Liberty Mutual Insurance Company ("Plaintiff"), brought this suit under 28 U.S.C. § 2201 against Defendant, James E. Sweeney ("Defendant"), seeking a declaration that it is not obligated to provide underinsured motorist ("UIM") benefits to Defendant for a motor vehicle accident that occurred on February 4, 2004.

In April 2007, both parties filed cross-motions for summary judgment before this Court (Docs. 13, 15). Plaintiff argued that coverage was barred by three policy exclusions: (1) for bodily injury sustained while using a non-owned motor vehicle in any kind of auto business; (2) for using a vehicle not owned by the insured in a manner not intended by the owner; and (3) for bodily injury sustained while using or occupying a non-owned motor vehicle or trailer not insured under this part, that is furnished or made available for regular use by you or a household resident. In response, Defendant argued that none of the exclusions applied and that Plaintiff had

an obligation to provide him with UIM coverage.

On January 4, 2008, the Court issued an Order granting summary judgment in favor of Defendant (Doc. 19) on the grounds that Defendant was using the vehicle in a way intended by the owner. On January 9, 2008, Plaintiff appealed the decision to the Third Circuit. On April 9, 2010, the Third Circuit remanded the matter back to the District Court to address the other two exclusions asserted by Plaintiff. Both parties filed supplemental briefs in support of their motions for summary judgment on August 14, 2009 (Docs. 27, 28).

On June 9, 2010, Plaintiff filed a Motion to Stay Proceedings (Doc. 30) pending the outcome of a matter pending before the Supreme Court of Pennsylvania: Williams v. Geico Government Employees Ins. Co., 986 A.2d 45 (Pa. 2009). On June 22, 2010, Defendant filed a Response in Opposition thereto (Doc. 31). On October 28, 2010, the Court denied Plaintiff's motion reasoning that a stay was not warranted because the two matters were not sufficiently related.

This Court will now address the remaining two policy exclusions.

## II. FACTUAL BACKGROUND

Plaintiff is an insurance company incorporated in the Commonwealth of Massachusetts, licensed to do business in the Commonwealth of Pennsylvania. Defendant is an adult individual who resides in Chalfont, PA. At all times relevant hereto, Prudential Property and Casualty Insurance Company provided Defendant with motor vehicle insurance in accordance with the Pennsylvania Motor Vehicle Responsibility Law ("MVRL"). On or about November 1, 2003, Plaintiff acquired the motor vehicle insurance operations of Prudential Property and Casualty Insurance Company.

On February 4, 2004, the date of the accident, Defendant picked up a 2000 Ford Taurus from AAA to deliver it to his customer the next morning. Later that evening, Defendant took the vehicle owned by AAA from his home to run to a local food market to buy taco shells for dinner. On his way home from the market Defendant was involved in an auto accident. The 2000 Ford Taurus owned by AAA was not covered under Defendant's motor vehicle insurance policy however, Defendant's policy provided UIM coverage for "non-owned" vehicles. Defendant subsequently filed a claim for UIM benefits which Plaintiff denied, citing the above policy exclusions.

As of the date of the accident, Defendant owned and operated an auto transmission repair business known as Shifty Transmission ("Shifty) in Chalfont, Pennsylvania. At that time, Defendant had a business relationship with George Tradewell, the owner of Bucks County Automotive, Inc. d/b/a AAA Automotive Center ("AAA"), an auto repair and car rental company located in Montgmoreryville, Pennsylvania. As part of their business relationship AAA would provide Defendant's customers with discounted car rentals while Defendant was servicing their transmissions. In exchange, AAA would send its vehicles requiring transmission work to Defendant.

Defendant's customers came into possession of the rental vehicles in several ways: (1) Defendant would give them directions or drive them to AAA to pick up the vehicle themselves; (2) an employee of AAA would drop off the vehicle to the customer; (3) Defendant's son would pick up the vehicle from AAA to deliver to the customer; or (4) Defendant would pick up the vehicle from AAA to deliver it to the customer the next day. At no time during the business relationship between AAA and Defendant did Defendant rent vehicles for his own personal use.

III. **LEGAL STANDARD**

The standard for summary judgment in an action for declaratory relief is the same as for any other type of relief. Pellegrino Food Products Co., Inc v. American Automobile Ins. Co., 655 F.Supp.2d 569, 574 (W.D.Pa., 2008) (citing Transguard Ins. Co. of America, Inc. v. Hinchey, 464 F.Supp.2d 425 (M.D.Pa.2006)). Summary judgment is appropriate where the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). See also Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex, 477 U.S. at 327 (1986).

Once the movant has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Under Rule 56(e), the opponent must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007). If the opposing party does not so respond,

summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-movant. See Matsushita, 475 U.S. at 587; Horsehead Indus., Inc. v. Paramount Commc'ns, Inc., 258 F.3d 132, 140 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-movant shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

No genuine issues of material fact exist thus, the Court will decide the remaining two issues as a matter of law.[1]

IV. **DISCUSSION**

Under Pennsylvania law, the task of interpreting an insurance contract is a question of law properly performed by the court. Meyer v. Cuna Mut. Ins. Society, 648 F.3d 154, 161 (3d Cir. 2011) (citing Regents of Mercersburg Coll. v. Republic Franklin Ins. Co., 458 F.3d 159, 163 (3d Cir. 2006). The principles governing the interpretation of an insurance contract are well settled. Bateman v. Motorists Mut. Ins. Co., 527 Pa. 241, 590 A.2d 281 (1991); Standard

---

[1] The Court will not address Paragraph C.5 Part 5 (the "Intended Use" exclusion), as the matter was previous determined by this Court. The Court maintains its determination that the exclusion does not bar coverage for Defendant's claim because Defendant's use of the vehicle for a personal errand was with the knowledge and consent of the vehicle's owner, Mr. Tradewell.

settled. Bateman v. Motorists Mut. Ins. Co., 527 Pa. 241, 590 A.2d 281 (1991); Standard Venetian Blind Co. V. American Empire Ins. Co., 503 Pa. 300, 469 A.2d 563, 566 (1983). The contract is read as a whole and construed according to its plain meaning. Aetna Cas. & Sur. Co. v. Debruicker, 838 F.Supp. 215, 217 (E.D. Pa., 1993). Where the contract is clear and unambiguous, the court must give effect to that language. Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F.Supp. 1090, 1093 (E.D. Pa., 1994). However, if the contract is susceptible to different constructions or more than one meaning, such ambiguities must be construed in favor of the insured. Id.

In interpreting an insurance contract, the court should not distort the meaning of the language or try to find ambiguities where one does not exist. See Aetna, 838 F.Supp. at 218. It is not enough that the parties disagree as to the meaning of the relevant exclusions; a contract will not be rendered ambiguous simply because the parties do not agree on the proper construction. See Nationwide Mut. Ins. Co. v. Chiao, No. 05-3488185, 2006 WL 1785367, at *3 (C.A.3 Pa., 2006).

### A. Interpretation of the "Auto Business" Policy Exclusion

In the instant case, the relevant policy exclusion provides:

Section E: LOSSES WE WILL NOT PAY FOR (Part 5)
9. We will not pay for bodily injury caused by anyone using a non-owned motor vehicle in any kind of auto business. Examples of auto business are: selling, repairing, servicing, storing or parking motor vehicles.

Plaintiff contends, inter alia, that the "auto business" exclusion bars coverage for injuries Defendant sustained as a result of the February 4, 2004 car accident because at the time of the

-6-

accident Defendant was driving a "non-owned" vehicle that he "rented"[2] for his customer. In opposition, Defendant argues that the facts of his case are not applicable to the above exclusion because he was running a personal errand- driving to the market to get taco shells for dinner - when the accident occurred.

The Third Circuit has made clear that creative arguments cannot be used to circumvent the basic principle that clear and unambiguous contract language must be given its effect. See Assoc. Coal Corp. v. Aetna Cas. & Sur. Co., 632 F.2d 1068, 1075 (3d cir. 1980). Here, the relevant issue is not one of timing as Defendant contends, but whether the language "in any kind of auto business" pertains to Defendant's use of the "non-owned" vehicle. It is undisputed that Defendant operated an auto transmission shop at the time of the accident. It is also undisputed that the purpose of Defendant coming into possession of the AAA vehicle he used at the time of the accident was to provide his customer with a rental car while Defendant serviced the customer's transmission. Furthermore, Defendant admitted that he never rented a car from AAA for his own personal use. This alone is sufficient for the Court to find that Defendant's use of the "non-owned" vehicle was in the interest of his auto transmission business.

In support of its contention, Plaintiff cited Zizzia v. Mitchell, 275 Pa. Super. 358, 418 A.2d 761 (1980). In Zizzia, an employee of a motor company was involved in an auto accident while driving a customer's car to deliver it to the employer's business for repairs. Id. at 359. The relevant language in the auto insurance policy excluded from coverage "any person or organization, or . . . any . . . employee thereof, operating an automobile sales agency, repair shop

---

[2] The Court notes that Defendant did not personally "rent" the vehicles but supplied the rentals for his customers' use.

. . . with respect to any accident arising out of the operation thereof . . ." Id. at 360. The Superior Court affirmed the lower court's finding that the accident arose out of the operation of the repair shop since the employee was providing a service to the car's owner in furtherance of the interests of the employer by delivering the customer's car to the shop for repairs. Id.

Defendant's attempt to distinguish his case from Zizza on the grounds that unlike Zizza, Defendant was not in the process of delivering the car to his customer when the accident occurred, is not convincing. While there may be a difference in timing between the present case and Zizzia, the Court has previously stated that the relevant issue is not one of timing. The Court must consider the specific facts of this case when making its determination. Here, the fact still remains that but for Defendant's desire to provide his customers with an alternative means of transportation while he serviced the customers' transmissions, Defendant would never have come into possession of the "non owned" vehicle. The specific reason for Defendant's use at the time of the accident is not enough to change the general purpose for which he possessed the vehicle.

### B. Interpretation of the "Regular Use" Policy Exclusion

Plaintiff also contends that coverage for Defendant's claim is barred under Part 5, Section E(3) of Defendant's policy (hereinafter the "regular use" exclusion). Defendant disputes this contention, arguing that the exclusion does not apply since he rarely used AAA vehicles and his access was restricted to occasions when his customers reserved such vehicles and were unable to pick the vehicle up themselves.

The regular use exclusion provides that Plaintiff will not provide underinsured motorist benefits "for bodily injury sustained while using or occupying a non-owned vehicle or trailer not

-8-

insured under this Part, that is furnished or made available for regular use by you or a household resident." Generally, courts have found the term "regular use" unambiguous in exclusion of automobile liability coverage. Nationwide Mut. Ins. Co. v. Shoemaker, 965 F.Supp. 700, 703 (E.D. Pa., 1997) (collecting cases); Prudential Prop. & Cas. Ins. Co. v. Armstrong, No. Civ.A. 03-4575, 2004 WL 603416, at *2 (E.D. Pa. 2004). Accordingly, this Court will interpret the provision in accordance with its plain meaning.

The regular use provision is defined as follows: in common usage, "furnished" means to provide or supply; "available" means suitable or ready for use and readily obtainable, accessible; and "regular" means usual, normal or customary. Id. "The words regular use suggest[] a principle use as distinguished from a casual or incidental use" or a "habitual use as opposed to occasional use." Prudential Prop. & Cas. Ins. Co. v. Peppelman, No. 02-1515, 2003 U.S. Dist. LEXIS 7650, at *7 (E.D. Pa., April 25, 2003). In determining whether a vehicle is available for regular use courts consider the availability for use or ownership by a member of a group likely to make their cars available for each other's use.[3] See Prudential Prop. & Cas. Ins. Co. v. Hinson, 277 F.Supp.2d 468, 476 (E.D. Pa. 2003) (holding that the "regular use" exclusion barred coverage of a police officer's claim after the officer was injured in an auto accident while driving a police vehicle that he drove twenty to forty hours per month for six years); Prudential v.

---

[3] There is no authoritative pronouncement as to the level of activity amounting to "regular use". The Pennsylvania Supreme Court has not provided guidance regarding this issue, although it has addressed the "regular use" exclusion on other grounds. Burstein v. Prudential, 570 Pa. 177, 809 A.2d 204 (2002) (holding that the "regular use" exclusion of UIM coverage was not in opposition to public policy). Therefore, this Court must predict how the Pennsylvania Supreme Court would rule. In making this prediction, the Court may look to lower state court decisions as well as decisions of other courts.

Armstrong, 2004 WL 603416, at *2 (finding that a park ranger injured while riding as a passenger in his employer's vehicle was barred from claiming UIM benefits under the regular use exclusion because the employee had regular access to the vehicle although the vehicle was not frequently used).

In this case, it is obvious that Defendant's use of the "non-owned" vehicle was not habitual but merely incidental to a service offered as a convenience to his customers. The record shows that AAA vehicles became available to Defendant only through the rental relationship between AAA and Defendant's customers. Defendant never rented a AAA vehicle for his own use and was not allowed access to a AAA vehicle unless his customer reserved the vehicle from AAA and agreed to sign a written contract to rent that vehicle. Furthermore, even when Defendant's customers did rent AAA vehicles, Defendant was not allowed unfettered access to the vehicle since his customers had multiple options of coming into possession of the rental; only one of the options involved Defendant delivering the vehicle to his customer. Plaintiff did not cite, nor has the Court found, any cases under Pennsylvania law in which the "regular use" exclusion includes delivery of vehicles to third parties. All of the relevant cases that Plaintiff cited to are limited to instances where an employee used or had access to a "non-owned" vehicle as part of his or her employment or where the "non-owned" vehicle was used by a relative of the insured. It is clear that Defendant's use falls short of the requisite amount of use required under such cases.

C. **CONCLUSION**

Based upon the undisputed facts of this case, this Court makes the following determinations: (1) the remaining policy exclusions- the "auto business" and "regular use"

exclusion - are unambiguous; (2) Defendant James Sweeney's use of the "non-owned" vehicle was in the furtherance of his auto business; and (3) Defendant's delivery of AAA rentals to his customers did not amount to regular use. Therefore, this Court will grant Plaintiff's motion for summary judgment. Accordingly, Defendants motion for summary judgment is denied.[4]

An appropriate order follows.

### ORDER

AND NOW, this 7th day of October, 2011, upon consideration of Parties Cross-Motions for Summary Judgment (Doc. 13, 15), and all Responses in Opposition thereto, **IT IS HEREBY ORDERED AND DECREED** that Plaintiff's Motion for Summary Judgment is granted. Defendant's motion is therefore **DENIED**.

**IT IS FURTHERED ORDERED** that Defendant is not entitled to Underinsured Motorist Benefits under Liberty Mutual Policy No. 28 8A042227 for his claims resulting from the February 4, 2004 auto accident.

BY THE COURT:

*Petrese B Tucker*

**Hon. Petrese B. Tucker, U.S.D.J.**

---

[4] The Court of Appeals correctly pointed out in opinion No. 08-1353, that to deny coverage under a policy Plaintiff need only prove one of its asserted policy exclusions. Accordingly, this Court properly finds the "auto business" exclusion sufficient to grant Plaintiff's motion for summary judgment.